[No. 11229.  Department One.  March 20, 1914.]

POTLATCH LUMBER COMPANY, *Respondent*, v. NORTH COAST
PRODUCE COMPANY, *Appellant*, H. J. SHELLMOUNT,
*Defendant*.[1]

EVIDENCE—PAROL EVIDENCE TO VARY WRITING—MATTERS NOT IN-
CLUDED.  A bill of sale reciting the transfer of "the entire stock of
produce, provisions and merchandise, together with the furniture
and fixtures and' the good will" of the business, is not inconsistent
with a verbal agreement of the parties that the debts and credits
of the vendor were also transferred to the vendee; hence oral evi-
dence thereof is admissible where those subjects were not covered
by the writing.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered February 5, 1913, upon find-
ings in favor of the plaintiff, in proceedings in garnishment,
tried to the court.  Affirmed.

*Jas. A. Dougan,* for appellant.

*Kerr & McCord,* for respondent.

MAIN, J.—The purpose of this action was to determine
whether the garnishee defendant was indebted to the principal
defendant, there being no controversy between the latter and
the plaintiff.

The cause was tried to the court without a jury.  The trial
court, in substance, found the facts to be as follows:  During
the year 1909, and for some time prior thereto, one W. M.
Harrington was doing business in the city of Seattle as a
sole trader, under the name of the North Coast Produce Com-
pany.  During the month of September of this year, Har-
rington purchased from the defendant Shellmount a quantity
of flour, on account of which there was a balance due Shell-
mount in the sum of $356.

On or about the 1st day of July, 1910, one S. C. Acklin
and Harrington organized a corporation, using the name of

¹Reported in 139 Pac. 496.

North Coast Produce Company. The trustees of the corporation numbered three, including Harrington and Acklin. At the time of the organization of the company, Harrington subscribed for substantially all, if not its entire, capital stock, in payment for which he was to transfer the stock and business which he had been conducting as a sole trader under the name of North Coast Produce Company. For the purpose of effecting this arrangement, a bill of sale was executed by Harrington and delivered to the corporation. The bill of sale recited that Harrington,

"For and in consideration of 251 shares of the capital stock of the North Coast Produce Company, a corporation, to him in hand delivered by the North Coast Produce Company, a corporation, party of the second part, does by these presents grant, bargain, sell and convey unto said party of the second part, its successors and assigns, the entire stock of produce, provisions and merchandise, together with the furniture and fixtures and the good will of that certain business located at 1013 Western avenue, Seattle, Washington, and known as the North Coast Produce Company."

At this time, both Shellmount and the plaintiff were claiming the $356 above mentioned. This Harrington was ready and willing to pay, if it could be determined to whom it should be paid. It was thereupon orally agreed among the three trustees that the $356 should be turned over to the corporation to be used by it in carrying on its business, and it was so used; and that the corporation would assume the indebtedness of Harrington to Shellmount and pay the same whenever it should be determined which of the claimants were entitled thereto. This agreement does not appear in the minutes of the corporation.

On the 29th day of June, 1912, the plaintiff instituted an action against the principal defendant (Shellmount) for the purpose of recovering an indebtedness then due it from such defendant. Thereupon a writ of garnishment was caused to be issued and served upon the North Coast Produce Company, a corporation. Answering the writ of garnishment, Harring-

ton, as president of the corporation, admitted an indebtedness to Shellmount in the sum of $356. Some three months subsequent to this, the control of the corporation having passed in the meantime into the hands of Acklin and another, application was made to withdraw the answer. This request was granted by the court. A new answer was then filed which denied any indebtedness. This was controverted by the plaintiff. In due time, the cause came on for trial upon the affidavit supporting the writ of garnishment, the answer thereto, and the controverting reply. Judgment was entered in favor of the plaintiff and against the garnishee defendant for the sum of $356, from which judgment the present appeal is prosecuted.

As we view the matter, the answers to two questions are decisive on this appeal: First, did the trial court err in permitting to be shown by oral testimony the agreement as to the $356 indebtedness due Shellmount from Harrington; and second, did the court err in finding as a fact the status of the corporation as to such indebtedness?

I. The offer of Harrington to turn over his business and stock in payment of his subscription to the capital stock of the corporation appears not to have been in writing. The acceptance was recorded in the minute book of the corporation. The bill of sale recited the transfer of the "entire stock of produce, provisions and merchandise, together with the furniture and fixtures and the good will" of the business. If the disposition of the $356 was a subject not covered by the written bill of sale, the admission of the testimony relative thereto would not offend against the rule which forbids oral evidence that contradicts or varies the terms of a written instrument.

In the case of *Welever v. Advance Shingle Co.*, 34 Wash. 331, 75 Pac. 863, the plaintiff had executed a bill of sale for all of his interest in a shingle mill, including, by special mention, the machinery, dry kiln, and all buildings connected with the mill. There was located upon the tract of land whereon

the mill stood certain timber; but this was not mentioned in the bill of sale. Subsequently the question arose as to whether or not the timber was included in the transaction. Oral testimony was offered and admitted to show that it was the understanding of the parties that the timber was included. It was urged that this testimony was not admissible because it offended against the rule that parol evidence will not be received when it contradicts or varies the terms of a written instrument. In passing upon the question, it was said:

"Appellants urge that, inasmuch as no mention is made of the timber in the written bill of sale, it was therefore improper to admit any testimony bearing upon this subject, for the reason that its effect was to contradict and vary the terms of the written instrument. If appellants' position is correct, it follows that the court should not have considered any of that evidence in passing upon the motion for a new trial. We believe the evidence admitted in this case does not come within the classification of parol evidence which contradicts or varies the terms of a written instrument. It is true, the bill of sale is complete in itself, but that fact is not inconsistent with the parties having entered into a verbal agreement, at the time of the execution of the writing, touching a subject not embraced in the writing."

The appellant, however, claims that the present case is controlled by *Mooney v. Mooney Co.*, 71 Wash. 258, 128 Pac. 225. The writings there under consideration provided for the transfer of the stock and business of an individual in payment of a stock subscription, and expressly provided that "all sums of money ·due him" should belong to the corporation. The present case is distinguishable from that in this, that there, as stated, the writings covered the matter of the sums of money which were due to the subscriber; while in this case, the debts and credits of Harrington as a sole trader are not mentioned in the offer, acceptance, or the bill of sale by virtue of which the stock and business were transferred to the corporation. The debts and credits of Harrington at the time of the organization of the corporation and the transfer

of his stock and business thereto were subjects not covered by the writing, and fall within the rule announced in *Welever v. Advance Shingle Co., supra.*

II.   It is claimed by the appellant that the court's finding relative to the corporation's relation to the $356 is not supported by the weight of the evidence. Upon this question, the testimony was sharply conflicting. From a reading of the record, we think the trial court's finding must be sustained.

The judgment will be affirmed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.